Argued March 15, decided April 4; rehearing denied June 13, 1911.

## GERKING v. LAIDLAW.

, [114 Pac. 922.]

EVIDENCE—SECONDARY EVIDENCE—COPIES OF LETTERS.

1. When notice was served on plaintiff to produce an original letter in regard to contracts and he failed to do so, and testified that he could not remember the communication, and was then asked if he would say that he did not receive such letter, according to his best recollection and belief, and he answered that he did not think he did, and the copy appeared in regular order in a book kept for that purpose, and it was admitted that contracts were sent by mail to plaintiff with directions to execute them, the copy was sufficiently identified, and was admissible as secondary evidence.

FRAUD—SALE OF LAND—MISREPRESENTATIONS BY VENDOR.

2. In an action against the manager and director of a corporation to recover damages for false representations respecting the land sold by the corporation to plaintiff, *held,* on the evidence, that a directed verdict was properly directed for defendant.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by J. N. B. Gerking against W. A. Laidlaw to recover damages alleged to have been sustained by false and fraudulent representations respecting the title to real property. The complaint alleges, in effect, the incorporation of the Columbia Southern Irrigation Company, the business in which it was engaged, and that about December 12, 1904, Laidlaw represented to plaintiff that the corporation possessed sufficient financial ability and intended to construct and operate an extensive system of irrigation and to supply water for that purpose; that it was the owner in fee of 320 acres of land, describing the premises, in sections 7 and 8, township 16 S., range 12 E.; that, relying on such representations, plaintiff was induced to enter into a contract with the corpora-

tion to purchase the land for $6,400, on account of which he had paid $2,560 and had given his promissory note for the remainder, upon which he had paid as interest $250.40; that such representations were falsely and fraudulently made, setting out wherein the alleged declarations were untrue; that, relying on such statements, plaintiff had made valuable improvements on the land which, with the water right, were reasonably worth $16,000; that on May 15 1906, he discovered that the representations were false, in that the title to the land was held by the United States, whereupon he demanded of the corporation and of its successor, the Columbia Southern Irrigation Company, a return of the money so paid and a cancellation and surrender of the notes, but they refused to comply; that, having exhausted his right to acquire government land, plaintiff lost possession of the premises and of the water right to his damage in the sum of $16,000, for which judgment was demanded. The answer denies the material averments of the complaint, and alleges, in substance, that on December 12, 1904, plaintiff entered into a contract with the Columbia Southern Irrigation Company whereby it was to furnish water to irrigate 960 acres of land, including the premises described in the complaint; that such lands then were desert claims on which filings, but not final proofs, had been made, all of which plaintiff well knew before signing the agreement; that the contract provided the corporation was to cause such desert claims to be assigned to plaintiff who was to secure from the general government a title to the premises; that he failed to make any proof as to the premises described in the complaint, but, conspiring with his son Grover, the latter instituted a contest which resulted in a cancellation of the desert entry of the claimant, from whom the corporation expected to secure the title, and the contestant now holds possession of the land. The reply having put in issue the allegations of

new matter in the answer the cause was tried, where-
upon the jury, pursuant to directions, returned a verdict
for defendant, and plaintiff appeals from the resulting
judgment.

For appellant there was a brief with oral arguments
by *Mr. W. P. Myers* and *Mr. Enoch B. Dufur.*

For respondent there was a brief over the names of
*Mr. Seneca Smith* and *Mr. A. E. Clark,* with an oral
argument by *Mr. Clark.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. As the action of the court in directing the verdict
is challenged, an examination of the testimony becomes
essential. The admitted facts are that on December 5,
1904, upon payment of $1,000 to J. H. Cook, an agent of
the Columbia Southern Irrigation Company, plaintiff pro-
cured a 10-day option to secure a right to use water for
irrigating 960 acres of land and to obtain a title to the
premises, for all of which he was to pay on the. basis
of $20 an acre. This real property embraced three desert
land claims of 320 acres each in Crook County, held,
respectively, by Maria Laidlaw, her husband (the defend-
ant), and Champ Smith. The defendant on December
12, 1904, assigned his land claim to plaintiff, whose son,
J. O. Gerking, secured a transfer of Mrs. Laidlaw's claim.
At the same time the corporation by defendant as its
manager executed to plaintiff a bond for a deed, covenant-
ing to convey a fee-simple title to the S. E. ¼ and the
E. ½ of the S. W. ¼ of section 7, and the W. ½ of the
S. W. ¼ of section 8, all in township 16 S. of range 12 E.,
containing 320 acres of land and constituting Smith's
desert claim, provided plaintiff on or before January 1,
1906, should have paid therefor $6,400. A contract was
also effected December 12, 1904, whereby the corpora-
tion stipulated to furnish plaintiff a given quantity of
water for irrigation; the concluding clause of the agree-
ment being as follows:

"The claim in sections 7 and 8, township 16 south, range 12 east, is to be deeded to J. N. B. Gerking as per terms of bond given this day and date."

The real property last referred to was thereupon taken possession of by plaintiff, who made valuable improvements thereon. Grover G. Gerking, who was not of age when the bond for a deed was given, on attaining his majority, contested Smith's right to the desert land claim, secured a cancellation of the entry and effected a filing thereon, his father being a witness at the trial, furnishing the money for that purpose, and thereafter remaining with this son in the house on the premises. This action is based on the theory that the defendant, being the manager and a director of the Columbia Southern Irrigation Company, has rendered himself liable in damages because, with knowledge of Cook's representation that the corporation was the owner in fee of the land described in the complaint, he ratified that statement, although he knew it was false, and thus became an active party to the alleged fraud.

The plaintiff, as a witness, was directed by his counsel as follows: "State to the jury what conversation you had with Mr. Cook relative to this particular tract of land here in controversy"; and replied: "He represented to me—he claimed it was land ready to be deeded." In referring to Cook's statements as to the ability of the corporation to furnish water for irrigation, plaintiff testified as follows:

"He represented the water proposition to be more than sufficient for our purpose, and three or four times as much as ever had been needed."

This witness, having further stated that, after seeing Cook, he met the defendant in Portland, was requested as follows:

"State to the jury what you told him the contract was, or what the understanding was. State it as nearly in the words as you can."

And replied:

"I told him that my understanding of the contract was that we were to have a bond for a deed for one-half section of the land, and they were to make the proofs and payment on the other. I did not understand in what way the transfer would be made of the other tracts of land."

Q. "What did you tell Mr. Laidlaw with reference to representations that Mr. Cook had made to you about the water supply and the right of the company to issue contracts?"

A. "I told him that he represented there was ample water, or several times as much as they would need; three or four times, I think, was the way it was talked."

Q. "State as nearly as you can the exact words that Mr. Laidlaw used to you in answer to your statement to him as to what Mr. Cook had said about the water supply, and the right of the company to transfer water to you."

A. "Well, I think that was all right."

The attention of the witness being again called to what defendant said to him at that interview, he was directed as follows: "Repeat as much as you can. You must give the substance of it," and replied:

"The substance of the whole business was that he was to make a bond for a deed for 7 and 8, and that he proposed to assign the other two half sections to my son and myself; and that was the agreement there at that time."

This testimony is corroborated by that given by J. O. Gerking, who was with plaintiff when the land was first examined, and, referring to the representations made by the agent of the corporation respecting the premises, he said:

"Well, Mr. Cook told us the land in 7 and 8 was deeded; that they could give me a deed for that, or a bond for a deed, and the land in 9 and 13 they would just have to give us an assignment on that; that was not proved up on."

J. H. Cook, as defendant's witness, was asked in referring to plaintiff and to the corporation:

"Did you ever tell him that the company had title to these half sections of land in 7 and 8?"

And answered:

"No, sir."

Q. "What did you tell him about those sections?"

A. "I told him there was proof sufficient there so that whoever decided to prove up on it could do so, whether the company or the purchaser."

Q. "What do you mean by proof sufficient?"

A. "Well, desert proofs; that the water was on the land and improvement made sufficient to get title."

Q. "That is, that the law had been sufficiently complied with?"

A. "Yes, sir."

Q. "Was that true?"

A. "Yes, sir; that was true."

W. A. Laidlaw, having testified that he received a telegram from plaintiff, respecting the option effected with Cook, there was received in evidence, over objection and exception of plaintiff's counsel, a letter press copy as follows:

"December 14, 1904.

"Mr. J. N. B. Gerking,
    "Athena, Oregon.
"Dear Sir: Inclosed find two copies of water contract to lands mentioned in your telegram, with notes inclosed for the balance of the payment. In regard to the payment for the proving up on the lands, will say that the one-half section in sections 7 and 8 will be proved up on the last of this month, when the money will be necessary for the payment of the same. The other pieces need not be proved up on for two years unless you wish. Please examine these contracts, and, if satisfactory, sign and acknowledge the same and send to some bank here, with the balance of payment, and I will exe-

cute the same and the bank will return one copy to you.
"Hoping this will be satisfactory, we are,
                    "Yours very truly,
            "Columbia Southern Irrigation Company,
                          "Per W. A. Laidlaw."

Notice having been served on plaintiff to produce the
original of this letter, and being unable to comply there-
with, he testified in relation thereto that he failed to
recollect the communication.  He was then asked:

"Would you say to the best of your knowledge and
belief that you did not receive such letter?"

And answered:

"I don't think I did."

The evidence shows that the copy appeared in regular
order in a book kept for that purpose, and, as it is
admitted that contracts were sent by mail to plaintiff
with directions to execute them, we think the copy was
sufficiently identified and in receiving it in evidence no
error was committed.

2. The defendant's attention having been called to an
interview with plaintiff in Portland, by an inquiry of the
court, "Was that the first time you had seen him?"  he
replied:

"The first time that I had seen him, and he said that
he didn't understand the conditions of the purchase just
as the contracts were sent up.  He supposed we were to
prove up on the land, and I told him 'No,' it was a mis-
take, and that they were to make proof, and we talked
the matter over quite a bit, and he said one of these
tracts he wanted for his older son, J. O. Gerking, I think,
and that he wanted one of them made out to him, and he
couldn't very well have two—

Q. "Himself?"
A. "Himself.  He spoke about it, as one of the sons
being under age and couldn't take it, and so we arranged
then to leave one of the claims, the Champ Smith claim,
which was about ready to prove up on.  The work had

been done at this time to prove up on, and we would give him a bond for a deed to be deeded to him when it was proved up on.

Q. "The idea was that would be proved up on by the company, and this bond was to secure them; they would get the title when it came to him?"

A. "Yes, sir."

Q. "Did you ever authorize this Mr. Cook or his brother B. S. Cook, to represent to Mr. Gerking that the company owned any of this land?"

A. "No, sir."

Q. "Did you ever state to Mr. Gerking that you owned it or that the company owned it, or had any power to deed it to him?"

A. "No, sir; never did any more than proving up on desert claims. * *

Q. "Now, did you tell Mr. Gerking, at the time he was here in Portland, or any other time, that Champ Smith was the name of this man who was to make the final proof and payment?"

A. "Yes, sir; I told them who all three of the names were.'

Q. "And you are quite sure you told him it was Champ Smith?"

A. "Yes, sir."

Replying to the testimony given by defendant at the meeting in Portland, plaintiff said:

"I don't remember that Champ Smith's name was ever mentioned in the transaction."

In alluding to the declaration imputed to him by the defendant respecting Grover G. Gerking, the father further testified:

"I don't think there was a word said about it. I haven't any recollection of mentioning my son to Mr. Laidlaw in reference to that."

This testimony has been set forth at length to show that Laidlaw never ratified any representations made by Cook to plaintiff respecting the condition of the title to

the land in sections 7 and 8 in township 16 S., range 12 E. It will be remembered that plaintiff testified that defendant affirmed the representations imputed to Cook as to the quantity of water which the corporation could furnish. This inquiry, however, is rendered unimportant by the deposition of Grover G. Gerking, who for several years had resided on the land in controversy, and, in answer to the question as to whether or not the receiver of the Columbia Southern Irrigation Company had not shut off the water from such land before the close of the irrigating season in the year 1908, replied:

"It was turned off my father's land, but not off this particular tract to my knowledge."

Not a word of testimony is to be found in the transcript relating to the financial ability of the corporation which stipulated to furnish the water, unless an implication of insolvency can be deduced from the fact that the Columbia Southern Irrigation Company had been succeeded by another corporation, and that the latter was represented by a receiver. But, however this may be, as the requisite quantity of water for irrigation was furnished for sections 7 and 8, the right to use water on any other land is not involved herein and the question of financial ability becomes unimportant.

As there was no testimony offered by either party tending in any manner to show Laidlaw's acquiescence in the representations imputed to Cook respecting the title to the premises described in the complaint, no error was committed in directing a verdict for defendant.

The judgment is therefore affirmed.        AFFIRMED.